UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-21620-CIV-GRAHAM/TORRES

| | |
|---|---|
| STIEFEL LABORATORIES, INC. and,<br>STIEFEL SALES, INC., | )<br>) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| GALDERMA LABORATORIES, L.P., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

**s/Mark J. Beutler**
Michael W. Casey, III
mcasey@ebglaw.com
Florida Bar No. 141430
Mark J. Beutler
mbeutler@ebglaw.com
Florida Bar No. 0023400
EPSTEIN BECKER & GREEN, P.C.
Suite 4300, Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Tel: (305) 982-1520
Fax: (305) 982-1521
*Counsel for Plaintiffs*

MI:233376v3

Plaintiffs, STIEFEL LABORATORIES, INC. and STIEFEL SALES, INC. [collectively "STIEFEL"], by and through their undersigned counsel, EPSTEIN, BECKER & GREEN, P.C., hereby file their opposition to Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).  In support hereof, STIEFEL would respectfully show:

1.      STIEFEL's headquarters and principal place of business is in Coral Gables, Miami-Dade County, Florida.  (Answer, ¶ 4).

2.      GALDERMA LABORATORIES, L.P. ("GALDERMA") is a limited partnership with its corporate headquarters located in Fort Worth, Texas.  GALDERMA regularly sells products, employs agents, and conducts business in Florida.  (Answer, ¶¶ 4, 7).

3.      STIEFEL develops and markets high-quality dermatological products. GALDERMA also develops and markets dermatological products which compete with those developed and marketed by STIEFEL.  Both GALDERMA and STIEFEL market their competing products throughout the United States.  (Stiefel Decl., ¶ 5).

4.      Prior to and during 2008, STIEFEL employed three sales representatives who are the subject of this lawsuit (the "sales reps").  STIEFEL employed: (a) Thomas Noll as a sales representative to service the area in and around the District of Columbia and northern Virginia; (b) Heather M. MacFarland to service the Philadelphia area (although not explicitly stated in the Complaint, McFarland's territory included portions of Delaware); and (c) Genevieve Williamson as a sales representative to service the area in and around Richmond, Virginia.

5.      Each of these three sales reps executed Confidential Disclosure Agreements (CDAs) with STIEFEL SALES, INC., which prohibited each, for a six-month period after leaving STIEFEL's employment, from promoting any non-STIEFEL dermatological product to any dermatologists or other STIEFEL customers or contacts that he or she called upon while

employed by STIEFEL.  (See Complaint, Exhs. "A", "B" and "C").

6.     During the period April 2008 through June 2008 despite the unambiguous restrictive covenants in the former sales reps' CDAs, GALDERMA hired Williamson, Noll and McFarland as sales reps, and deployed them to contact, solicit, sell, and market GALDERMA's dermatological products that compete with STIEFEL's dermatological products to the same physicians and other STIEFEL customers whom the former STIEFEL sales reps called upon while employed by STIEFEL.  (Complaint ¶¶ 8-42).  In so doing, GALDERMA tortiously interfered with existing contracts among STIEFEL and STIEFEL's sales reps, and thereby unfairly exploited STIEFEL's existing relationships with dermatologists or other customers, sales contacts, and territories developed by STIEFEL's sales reps.

7.     The restrictive covenants in the CDAs are reasonable and benign. See Fla. Stat. § 542.335(d) (restrictive covenants for a period of less than two years are presumptively reasonable); North American Products Corp. v. Moore, 196 F.Supp.2d, 1217, 1228 (M.D. Fla. 2002)(employer has legitimate business interest in prohibiting solicitation of its customers).  The CDA's permit the former sales reps to work: (a) for a competing pharmaceutical manufacturer, including GALDERMA; (b) for GALDERMA as a sales rep in a territory other than the territory previously serviced while employed by STIEFEL; and (c) as a GALDERMA sales rep in the same territory while employed at STIEFEL. The CDAs prohibit only the solicitation of the physicians, STIEFEL customers, and other contacts whom the sales reps had called upon while employed at STIEFEL.

8.     Paragraph 4.7 of each of the CDA's executed by the STIEFEL sales reps contains choice-of-law provisions requiring that the contracts be construed and interpreted in accordance with the laws of Florida, without regard to Florida's choice of law rules, i.e., Florida's

substantive law would apply to interpretations and enforceability of the CDAs.  (<u>See</u> Complaint, Exhs. A-C).  Williamson's CDA provides a forum selection provision requiring that disputes be litigated in Miami-Dade County.  (Complaint, Exh. A, ¶ 4.8)

9.    GALDERMA had prior knowledge of the three former STIEFEL sales reps' CDA's and the restrictive covenants contained therein by virtue of a letter dated January 3, 2005, from Devin Buckley, STIEFEL's General Counsel, to Albert Draaijer, GALDERMA's President of North American Operations (<u>see</u> Complaint, Exh. "D").  Buckley, is employed and resides in the Southern District of Florida.  (Buckley Decl., ¶ 2).

10.    Charles Stiefel, Chief Executive Officer of Stiefel Laboratories, Inc. and Stiefel Sales, Inc., is expected to testify as to STIEFEL's legitimate business interests in requiring and enforcing the restrictive covenants in the former sales reps' CDAs.  (Stiefel Decl., ¶¶ 5-17).  Mr. Stiefel is employed and resides in the Southern District of Florida.  (<u>Id.</u>, ¶ 2).

11.    As reflected in each of their declarations, the three former sales reps do not work in the Northern District of Texas, and do not travel there regularly as part of their job.  (Noll Decl. ¶ 11-12; Williamson Decl. ¶ 11-12; McFarland Decl. ¶ 13-14).  McFarland no longer works for GALDERMA.  (Defendant's Mem., p. 3 n.1).

## I.    ARGUMENT

GALDERMA hired persons whom STIEFEL employed as sales reps in Pennsylvania, Virginia, Delaware and the District of Columbia.  (Answer, ¶ 34).  GALDERMA had prior knowledge that STIEFEL's sales reps were subject to CDAs containing non-solicitation provisions.  (Exh. D to Complaint).  GALDERMA nonetheless deployed these sales reps to solicit on behalf of GALDERMA the same physicians, STIEFEL customers, and other contacts whom the sales reps called upon while employed by STIEFEL.  (Complaint, ¶ 41).  Having done so, GALDERMA now seeks have this case transferred to the Northern District of Texas, where

GALDERMA's corporate headquarters is located.  GALDERMA claims that transfer is required because GALDERMA employees who reside in Fort Worth, Texas, met with and spoke on the telephone with these former STIEFEL sales reps, and took notes of these communications.  To the contrary, GALDERMA has failed to establish that the convenience of the parties and witnesses, and the interests of justice, overwhelmingly favors litigation in the Northern District of Texas.  Such a showing is required for the Court to grant the motion.

A motion to transfer venue should be granted only if: (1) the district to which a party seeks a transfer is the district where the suit might have been brought, and (2) the convenience of the parties and witnesses and the interest of justice support the transfer. 28 U.S.C. § 1404(a).  GALDERMA falsely contends that this cause of action arose in the Northern District of Texas.  Nonetheless, 28 U.S.C. § 1391 (a) and (c) would have permitted the initial filing of this matter in the Northern District of Texas or any other judicial districts where GALDERMA conducts business.  However, the convenience of the parties and witnesses and the interests of justice militate against transfer.  In addition, as discussed below, none of the acts or omissions creating the cause of action occurred in the Northern District of Texas.

### A.  There is a Strong Presumption Against Transfer

The plaintiffs' choice of forum is strongly preferred.  See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ("The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference . . . .  Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").  The burden is on the defendant seeking transfer under 28 U.S.C. § 1404(a) to establish why there should be a change in forum. Id.  It is insufficient for GALDERMA to merely show that the defendant would prefer a different forum, or that the claim arose elsewhere (in this case the claim arose in three middle Atlantic states and the District of Columbia, an area encompassing

five federal judicial districts).

Transfer is unwarranted if the result is merely to shift the inconvenience of where the action is located from one party to the other. <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."). Transfer can only be granted where the balance of convenience of the parties strongly favors the defendant. <u>See Robinson v. Giarmarco & Bill, P.C.</u>, 74 F.3d 253, 260 (11th Cir. 1996) ("the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). "Defendants moving for transfer have a heightened burden as they must prove with particularity the inconvenience caused by the plaintiff's choice of forum." <u>Mason v. Smithkline Beecham Clinical Laboratories</u>, 146 F.Supp.2d 1355, 1359 (S.D. Fla. 2001).

In deciding whether a change in forum is warranted, the court must consider the following factors: (1) plaintiff's choice of forum; (2) convenience of the parties and witnesses; (3) relative ease of access to sources of proof; (4) availability of compulsory process for witnesses; (5) location of relevant evidence; (6) financial ability to bear the cost of the change; and (7) all other practical problems that make trial of the case easy, expeditious, and inexpensive. <u>See Gonzalez v. Pirelli Tire, LLC</u>, 2008 WL 516847, *2 (S.D. Fla. 2008).[1] GALDERMA enumerates many of these same factors, conspicuously omitting the first one in its discussion. GALDERMA's analysis is predicated on the fiction that its activity in the Northern District of Texas is germane to this dispute, which in turn is based upon a mischaracterization of the nature of this dispute. Further, GALDERMA imbues with unwarranted importance certain background information of peripheral relevance which, in all probability, are undisputed. GALDERMA's analytic error bleeds into its analysis of all of the transfer criteria and, hence, a preliminary

---

[1] The formulation of this multi-factored test differs slightly among the cases.

discussion of the cause of action and its ties to the Northern District of Texas is warranted.

**B.      This dispute has no significant nexus to the Northern District of Texas**

In support of its motion to transfer, GALDERMA argues that "the alleged illegal conduct that STIEFEL complains of occurred in the Northern District of Texas where GALDERMA allegedly interfered with the employment agreements of STIEFEL's former employees by hiring them in supposed violation of STIEFEL's covenant not to compete." GALDERMA's contention is false. None of the activity which forms the basis of this lawsuit occurred in Fort Worth. The activity which GALDERMA points to that occurred in Texas and upon which GALDERMA rests its argument, has only peripheral or no relevance to this lawsuit.

GALDERMA obscures in its memorandum that its recruitment of STIEFEL's former sales reps occurred primarily in the sales reps' respective territories – Virginia, Washington, D.C., and Pennsylvania. (Garberding Decl., ¶¶ 5, 8). GALDERMA contends, however, that because the final step of the recruitment process was an interview in Fort Worth, Texas, the focus of this litigation should be in the Northern District of Texas. The major problem with GALDERMA's argument is that the former sales reps' restrictive covenants -- which GALDERMA tortiously interfered with -- did not restrain the former sales reps from working for GALDERMA. Hence, GALDERMA's solicitation and hiring of them was not tortious, even though GALDERMA knew of the restrictive covenants. What constitutes tortious interference with those contracts is GALDERMA's deployment of these former STIEFEL sales reps, in the same territories where they previously marketed STIEFEL products, to call upon on behalf of GALDERMA, the same physicians whom the sales reps previously called upon in their capacities as STIEFEL sales reps. Thus, this cause of action arose in Virginia, Washington, D.C., Pennsylvania, and Delaware. GALDERMA's tortious conduct did not occur, and could not have occurred, in Fort Worth, Texas.

Similarly, GALDERMA absurdly stresses that some of the telephone calls placed to the former STIEFEL Reps as part of their recruitment by GALDERMA were placed from Fort Worth, and that the records of the telephone interviews and correspondence between the former sales reps and persons who interviewed them were in some case created in, and in other cases subsequently relocated to Fort Worth. Inasmuch as GALDERMA admits that GALDERMA in fact hired these former STIEFEL sales reps to work in the respective territories where they previously worked while employed by STIEFEL (all of which territories were outside the Northern District of Texas), all of this evidence has at best peripheral relevance to this dispute. It is unlikely that any of the persons who maintain the records would be called as witnesses at trial. Absent agreement of the parties, these witnesses' depositions, if necessary, would be conducted in the district wherein they reside, regardless of the venue of this lawsuit.

Further, GALDERMA stresses that the former sales reps have been, or are scheduled to be, trained in Fort Worth (although GALDERMA acknowledges that the majority of the former STIEFEL sales reps' training occurred in their respective sales districts). Only one former STIEFEL sales representative has actually undergone any training in Fort Worth. GALDERMA maintains, however, that the other two sales reps were scheduled to undergo training in Fort Worth, Texas. McFarland no longer works for GALDERMA, and presumably will not be trained in Fort Worth by GALDERMA. GALDERMA argues that the records of the training and location of some of the trainers are in Fort Worth. It is hard to see how GALDERMA's training of the STIEFEL sales reps is relevant to this dispute. No legal duty to STIEFEL was breached by GALDERMA's training the STIEFEL sales reps, regardless of where that training occurred.

Transfer pursuant to Section 1404(a) is unwarranted where, as here, the relevant cause of action and related evidence and witnesses are located in numerous jurisdictions, and where the

transferee district is not the dominant locus of activity. <u>See, e.g.</u>, <u>Toro v. United States</u>, 278 F.Supp.2d 1235, 1244 (D. Hawaii 2003) (in case involving misdiagnosis and negligent surgery by Veterans Administration physicians, arising from car accident in Texas, where treatment occurred in New York, Puerto Rico, New Mexico, and Florida, court refused to order transfer from the District of Hawaii to the Southern District of Florida because litigation would have to accommodate witnesses from numerous jurisdictions, transfer would create unnecessary delay, and although events significant to the litigation occurred in Florida, Florida was not the dominant locus of activity); <u>Excelsior Design, Inc. v. Sheres</u>, 291 F.Supp.2d 181, 186 (E.D.N.Y. 2003) (court refused to transfer venue where "witnesses identified by the parties are located all across the country . . . [and] the operative facts in th[e] case are too spread out to clearly favor either venue."). STIEFEL has a right to sue GALDERMA where it does business. <u>See</u> 28 U.S.C. § 1391(c) (corporation regularly doing business in judicial district subjects it to the personal jurisdiction of the courts there and makes district a proper venue in an action against the corporation.); <u>Penrod Drilling Co. v. Johnson</u>, 414 F.2d 1217, 1223 (5th Cir. 1969) (partnerships are treated like corporations for purposes of Section 1391(c)). GALDERMA admits that it does business in this judicial district. (<u>See</u> Answer, ¶ 4).

      C.     **The criteria for assessing suitability of transfer**

          1.     **Plaintiff's initial choice of forum**

Courts have held that the plaintiff's choice of forum is the "paramount" or primary consideration. <u>Scheble v. Davenport</u>, 2007 WL 1893364 (N.D. Tex. 2007); <u>Kane v. Hallmark Ins. Co.</u>, 409 F.Supp. 467 (S.D. Fla. 1976) ("It is clear that, a plaintiff's choice of a proper forum is a paramount consideration, in any determination of a transfer request"). The plaintiff's choice of forum should rarely be disturbed. <u>E.g.</u>, <u>Spinevision, Inc. v. Burel</u>, 2006 WL 3531723, *3 (N.D. Ga. 2006)(citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947)).

It is important for courts to set a high standard for transferring actions to other judicial districts. Setting the defendant's burden at a low level will encourage the filing of transfer motions with their attendant delay and expenditure of judicial resources any time the defendant prefers a venue different from that chosen by the plaintiff.

### 2.   The convenience of the parties and witnesses.

#### a.   Convenience of the parties

The convenience of the parties is the least important of the considerations which are involved in the analysis under Section 1404(a). Durabla Mfg. Co. v. Continental Cas. Co., 1998 WL 957250, *3 (D. Minn. 1998) (citing Wright, Miller & Cooper, Federal Practice and Procedure § 3849, 1998 Supplement, p. 77). In assessing the convenience of the parties, the Court must consider the convenience of all parties involved, not just one party's convenience. Generally, when transferring a case would merely shift the burden of litigating the case in a foreign district onto the plaintiff, the convenience of the parties factor weighs in favor of preserving venue in the plaintiff's chosen forum. See Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (denying transfer when it would merely shift balance of convenience to the other party). "Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient." Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964). Consideration of the parties' convenience is appropriate where, unlike here, the case was filed in a judicial district in which neither party resides. Rigby v. Flue-Cured Tobacco Co-op. Stablization Corp., 2006 WL 1312412 (M.D. Ga. 2006) ("If, . . . the plaintiff does not reside in the district in which he or she brought the action, this fact militates in favor of a transfer to the district where the defendant resides, because the plaintiff will be inconvenienced by having to travel whether the action is transferred or not.")(quoting 17 James Wm. Moore Et Al., Moore's Federal Practice ¶ 111.13[1][b] (3d ed. 2005)).

GALDERMA's argument that the parties' convenience is furthered by transfer to the Northern District of Texas contains two errors.  First, GALDERMA essentially argues that litigation would be more convenient for the parties if the case is transferred to the Northern District of Texas because the relevant documents and witnesses are located in Fort Worth. GALDERMA's argument conflates the "convenience of the parties" inquiries with the "access to evidence" and "convenience of witnesses" inquiry (both of which are discussed below). GALDERMA cannot play the same card twice.  Second, GALDERMA's argument is a manifestation of its mischaracterization of this dispute, i.e., GALDERMA's false contention that STIEFEL is complaining about acts that occurred in Fort Worth, Texas.  Perhaps GALDERMA personnel stationed in Fort Worth telephoned or interviewed the former STIEFEL sales reps in connection with hiring them, and GALDERMA personnel were planning to supplement the sales reps' training in Fort Worth, and even recorded these events on one or more documents that were created in or relocated to Fort Worth.  Such evidence is irrelevant or peripheral to the dispute and its location has no bearing on the convenience of the parties in litigating in any particular forum.

NISSM Corp. v. Time Warner, Inc., 2008 WL 540758 (S.D. Fla. 2008), a patent infringement suit relied upon by GALDERMA, is inapposite.  In NISSM, the district court ordered a transfer because the major of nonparty companies involved in the infringement suit – which accounted for 80 percent of the market for the infringed goods -- were located, and carried out their operations, in the transferee's district.  The court noted that these major nonparty entities "had witnesses and evidence crucial to th[e] case."  The court also noted that all but one of the "critical" witness resided in the transferee's district.  NISSM is inapposite because, in this case, almost all relevant witnesses, and all important witnesses, reside outside the purported transferee's district.  Further, in NISSM, most of the unlawful activity occurred in the

transferee's district whereas, in this case, the unlawful activity occurred outside the transferee district (i.e., in Pennsylvania, Delaware, Virginia and the District of Columbia).

GALDERMA also relies upon Thermal Technologies, Inc. v. Dade Service Corp., 282 F. Supp. 2d 1373 (S.D. Fla. 2003).   Thermal Technologies is distinguishable.   In Thermal Technologies, the district court ordered a transfer where the moving party demonstrated that the defendant corporation's senior management – its President, Vice President and Office manager -- would likely have to attend a two-week trial in a foreign judicial district. Id. at 1375-77.  The corporation had only 17 employees and the absence of their senior management for that long a period would have adversely affected the corporation.  Further, the court noted that the strong preference for the plaintiffs' choice of forum was inapplicable because the plaintiff's chosen forum was not the plaintiff's home forum. Id. at 1375-76.  In this case, GALDERMA's senior management are unlikely to be witnesses, trial is unlikely to last more than one week, and the plaintiffs' chosen forum is their corporate headquarters.

### b.    Convenience of the Witnesses

The convenience of the witnesses is important to the decision to transfer venue from one forum to another.  However, "a court must focus primarily upon the availability and convenience of key witnesses."  McNair v. Monsanto Co., 279 F.Supp.2d 1290, 1311 (M.D. Ga. 2003) (emphasis in original).   The convenience of one witness may outweigh the convenience of numerous less important witnesses. Id.

In assessing the convenience of the witnesses, courts distinguish between party witnesses and non-party witnesses. Ramsey v. Fox News Network, LLC, 323 F.Supp.2d 1352, 1356 (N.D. Ga. 2004).  Courts give less weight to the convenience of party witnesses in deciding on a motion to transfer venue.  Mason, 146 F.Supp. 2nd at 1361; State Street Capital Corp. v. Dente, 855 F.Supp. 192, 197 (S.D. Tex. 1994).  Party witnesses are the parties themselves and those

closely aligned with a party. The basis for this distinction is the preference for live testimony. Party witnesses are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses. Ramsay, 323 F.Supp. 2d at 1356; Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co., 844 F.Supp. 1163, 1166 (S.D. Tex. 1994).

A party seeking a transfer under Section 1404(a) must "clearly specify the key witnesses to be called and a general statement of what their testimony will cover as it seeks transfer based upon convenience of the witnesses." In re Holmes, 306 B.R. 11, 15-16 (Bkrtcy. M.D. Ga. 2004); see also Mason, 146 F.Supp.2d at 1363 (Fla. 2001) (the party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony); Barnett v. Kirby Inland Marine, Inc., 202 F. Supp. 2d 664, 668 (S.D. Tex. 2002) ("At an absolute minimum, a [d]efendant must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the [c]ourt why it would be inconvenient for them to testify . . . .  Without a realistic and comprehensive summary of the testimony, it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial.").

A defendant's motion seeking transfer is disfavored where, as here, a defendant fails to specify the key witnesses who purportedly will be inconvenienced by the plaintiff's chosen forum, and their expected testimony. Oller v. Ford Motor Co., 1994 WL 143017, *3 (M.D. Fla. 1994).  Transfer of venue may be denied where the movant does not show that the witnesses would be unwilling to testify and that compulsory process would be necessary. 28 U.S.C.A. § 1404(a); Mason, 146 F.Supp 2d at 1361-63.

GALDERMA identifies only one witness whom GALDERMA claims has relevant testimony, and who resides and works in the Northern District of Texas – Kristine Garberding.

Ms. Garberding claims to have knowledge of GALDERMA's recruitment, hiring, training and employment processes, and the location of related records.  As stated, these matters are of peripheral relevance to this dispute.  Further, Garberding claims no first hand knowledge of even these peripheral matters.  She does not claim to have conducted the interviews or training of the former STIEFEL sales reps. In other words, Ms. Garberding is not a key witness, and her testimony would be inadmissible hearsay.  GALDERMA alludes to the existence of other unnamed Galderma employed potential witnesses who reside in Fort Worth.  Unidentified witnesses are normally disregarded in determining the propriety of transfer under Section 1404(a). See, e.g., In re Holmes, 306 B.R. at 15 ("If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied."); J.I. Kislak Mortg. Corp. v. Connecticut Bank and Trust Co., N.A., 604 F.Supp. 346, 348 (S.D. Fla. 1985) (denying motion to transfer because "defendant has not even suggested that any of these witnesses, neither specified by name, nor generally by the nature or quality of their purported testimony, would be unwilling to testify and that compulsory process would be necessary."); Mason, 146 F.Supp. 2d at 1362.

The three former STIEFEL sales reps are important witnesses.  They all signed declarations in which they concede that they do not reside in or regularly travel to Fort Worth. But these former sales reps nonetheless state that it would be more convenient for them to travel to the Northern District of Texas than to the Southern District of Florida because of the proximity of GALDERMA's headquarters in Fort Worth.  GALDERMA's argument makes no sense.  It is no more convenient for the former sales reps to travel from their homes in the middle Atlantic areas to the Northern District of Texas than to the Southern District of Florida.  The location of GALDERMA's headquarters has no conceivable effect upon the convenience of the

travel.  Moreover, one of the former STIEFEL sales reps -- Heather McFarland -- no longer works for GALDERMA.  Absent some explanation for the former STIEFEL sales reps' dubious contention that litigation in one distant judicial district is preferable to another, the Court should give no weight to these representations.

This case is similar to Mason v. Smithkline Beecham Clinical Laboratories, 146 F.Supp.2d 1355 (S.D. Fla. 2001).  In Mason, the plaintiffs filed suit in the Southern District of Florida alleging that they contracted hepatitis from contaminated needles used to withdraw blood in the defendants' clinic located in the Northern District of California.  The defendants sought transfer under Section 1404(a) to the Northern District of California on the grounds that: (a) most of the key witnesses live in California; (b) the parties would be unable to compel the attendance of unwilling California witnesses in a Florida trial; (c) the situs of the incident was in California; (d) a related case was brought in the Northern District of California on behalf of multiple plaintiffs; and (e) fifty-eight consolidated cases were then pending in California's Superior Court for the County of Santa Clara, of which thirty-one arose from the alleged contraction of viral infections at the defendants' clinic.

The district court denied the transfer motion.  The court acknowledged that litigation would be more convenient for the defendants if the case were transferred, but it would be less convenient for the plaintiffs.  Although there were many witnesses located in California, the important criteria was whether any of these witnesses would be unwilling to testify at trial, and that the defendants failed to make the requisite showing that live testimony from these witnesses could not be obtained absent transfer to the Northern District of California.  Further, denial of transfer was appropriate where the witnesses are employees of a party whose presence at trial in a distant forum could be obtained.

With regard to non-party witnesses, the defendants in <u>Mason,</u> in many instances, failed to: (a) identify the nonparty witnesses by name; (b) discuss in detail these witnesses' proposed testimony; and (c) demonstrate that these witnesses' testimony was central to the case.  As for the California witnesses specifically identified by the defendants – the persons who actually withdrew the blood or observed the act – the defendants failed to establish that these witnesses' convenience or availability was more important to the fair resolution of the case than the convenience or availability of Florida witnesses who would testify as to the damages elements of the case.  Further, although plaintiff's injury resulted from tortious activity that occurred at defendants' California clinics, the plaintiffs injuries were ongoing, and continued to materialize, and some of the evidence of that injury would be located in the Southern District of Florida.

The <u>Mason</u> court concluded that although the defendants convinced the court that fewer witnesses would be inconvenienced it the action were transferred, the defendants nonetheless failed to carry their burden to show: (a) that the enumerated witnesses would not attend trial; (b) the importance of the witnesses' testimony; and (c) whether the testimony could be effectively presented by deposition.  Because the defendants had the burden of proving that the balance of conveniences strongly favors transfer, the motion to transfer was denied.

The same factors that compelled the court to deny the transfer motion in <u>Mason</u> are present here.  GALDERMA has failed to identify key witnesses who would be unwilling to testify absent transfer of the case to the Northern District of Texas.  Further, certain key witnesses reside in this district who will testify as to GALDERMA's pre-hire knowledge of the former sales reps' restrictive covenants, STIEFEL's legitimate business interests which the restrictive covenants protect, and the economic injury to STIEFEL arising from GALDERMA's tortious conduct.  These are the critical issues on which this case will probably turn.

Because GALDERMA cannot identify key witnesses who will be inconvenienced by litigation of this case unless it is transferred to the Northern District of Texas, this factor does not militate in favor of transfer of venue.[2]

### 3.   The relative ease of access to sources of proof

GALDERMA contends that because documents germane to the hiring, recruitment and training of the former STIEFEL sales reps are housed in Fort Worth, Texas, access to relevant evidence would be more available if this matter is transferred to the Northern District of Texas. This argument would apply if the documents were in the possession of nonparties over whom this court had no jurisdiction.  Relevant documents in the parties' possession will have to be produced and exchanged regardless of venue. There is no difference in the effort required to produce documents across town or across the country.  See Picker Intern., Inc. v. Travelers Indem. Co., 35 F.Supp.2d 570, 574 (N.D. Ohio 1998) ("[W]hile the location of physical evidence such as the wreckage of a crashed plane ought to be given more weight in the balancing analysis under § 1404(a), the location of documentary evidence is a minor consideration. Documents may easily be sent by mail, copied or even faxed to a remote location.").

Numerous courts have rejected the argument that transfer was warranted due to the location where a party stored its documents.  For example, the court in Media Farm. Inc. v. eToll, Inc., 2000 WL 287927, *4 (N.D. Tex. 2000), stated:

> [Although] [i]t appears that the vast majority of the witnesses, documentation, software, and other technical materials are located in Pennsylvania. [The defendant] makes much ado about a number of documents, e-mails,

---

[2] S.D. Fla. L.R. 7.1(C)(3) requires that all declarations supporting the motion be filed with the motion, and any affidavits filed with the reply memorandum be limited to rebuttal material.  Accordingly, in the event GALDERMA files with the Reply declarations from additional witnesses whose testimony GALDERMA purports is crucial to the case, but which GALDERMA neglected to alert the Court to previously, such declarations should be disregarded.  See, e.g., Diaz v. Jenne, 2007 U.S. Dist. LEXIS 4049, *12 n.2 (S.D. Fla. 2007) (reproving counsel for moving party for filing with reply memorandum documentary evidence supporting arguments contained within initial brief).

> correspondence and files being located in their Texas offices.  In . . . the modern setting of increasing judicial willingness to accept FAXed documents and E-Mail transmissions, presentation of documentary evidence at trial is not the burden that it once posed.

Similarly, the district court in Bayer AG v. Biovail Laboratories, Inc., 35 F.Supp.2d 192, 194-95 (D. Puerto Rico 1999), rejected the argument that transfer was warranted based on the location of documentary evidence, noting that documents can be easily forwarded to other judicial districts through a myriad of efficient delivery services. See also, Ivax Corp. v. B. Braun of America, Inc., 2001 WL 253253, *2 (S.D. Fla. 2001) (in denying transfer motion, the district court stated: "While a great deal of the documentary evidence and persons with knowledge of Defendants' [accounting information] are located in Pennsylvania, some of the critical records and books are in California and Puerto Rico and elsewhere.  In the real world of computerization and electronic transfer of information, the assemblage of accounting data can be accomplished as easily in Miami, Florida as anywhere else.").

Further, this dispute is not about whether GALDERMA hired or trained the former STIEFEL sales reps; it is about the extent to which GALDERMA deployed the sales reps to service customers and contacts developed by STIEFEL in the respective assigned territories, the effect upon STIEFEL's legitimate business interests, and the economic injury arising therefrom. Based on the recently-filed Answer to the Complaint, the case turns on Galderma's pre-hire knowledge of the restrictive covenants, see Answer, ¶31 & p.9 (Fourth Affirmative Defense), and the enforceability of the restrictive covenants, see Answer, p. 9 (Third Affirmative Defense). One key witnesses with testimony relevant to Galderma's pre-hire knowledge of the restrictive covenant, see Decl. of Devin Buckley, and another key witness with testimony relevant to the enforceability of and the legitimate business interests protected by the restrictive covenants, see Decl. of Charles Stiefel, reside in this judicial district.

**4.      Availability of compulsory process to procure presence of unwilling witnesses**

GALDERMA is unable to identify any nonparty witnesses who reside in the Northern District of Texas whose compulsory process will be necessary.  This is unsurprising inasmuch as none of the actual events that compose the controversy in this matter took place in that district. GALDERMA speculates that if there are any unwilling witnesses, they will likely reside in the Northern District of Texas.  Certainly the STIEFEL customers who were improperly solicited by the STIEFEL sales reps might be unwilling witnesses, but they work, and presumably reside, in the sales reps' territories, which encompass four judicial districts, none of which is near the Northern District of Texas.

**5.      The cost of obtaining the presence of witnesses.**

Because few if any relevant witnesses in this matter reside in the Northern District of Texas, the cost of obtaining the presence of witnesses does not favor transfer.  GALDERMA's contrary argument, again, rests upon the false premise that determining whether GALDERMA hired the three former sales reps is a key fact requiring the presentation of evidence at trial, and that GALDERMA's training of them has some conceivable relevance to this dispute.  Again, this lawsuit is about GALDERMA's deployment of these former STIEFEL sales reps in the same territories where the sales reps previously marketed STIEFEL products, and where GALDERMA has them calling upon on behalf of GALDERMA the same physicians whom they previously called upon in their capacities as a STIEFEL sales reps.  It will not reduce the cost of obtaining the presence of trial witnesses by transferring this matter to the Northern District of Texas.

**6.      The public interest**

*a.      docket congestion*

GALDERMA argues that dockets are slightly more congested in the Southern District of

Florida than in the Northern District of Texas and, therefore, the interests of justice favor transfer to the latter district. GALDERMA confuses the interests of justice with the interests of the courts. Although courts compare docket conditions between competing judicial districts when assessing the interests of justice for purposes of Section 1404(a), what the courts have in mind is that getting to trial may be speedier in another district because of its less crowded docket. By itself, docket congestion is an irrelevant and inappropriate factor to consider on a motion under Section 1404(a). E.g., Fannin v. Jones, 229 F.2d 368, 269-70 (6th Cir. 1956) ("A court should not under § 1404(a) look to docket conditions in order simply to serve the court's own convenience. . . . A prompt trial, however, is not without relevance to the convenience of parties and witnesses and the interest of justice."); Medicap Pharmacies, Inc. v. Faidley, 416 F.Supp.2d 678, 690 (S.D. Iowa 2006)(same).

There is nothing to be gained by using crude ratios of case filings per district court judge as a proxy to determine average docket speed within a judicial district where, as here, statistics for docket movement are available. According to the most recent available information (September 2007), the mean period between filing and trial in the Northern District of Texas is 19.4 months for jury trials, and 16.5 months for bench trials. For the Southern District of Florida, these periods are 17.9 months and 17.0 months, respectively. The difference in docket speed between the judicial districts is trivial, but slightly favors venue in the Southern District of Florida. See http://www.uscourts.gov/judbus2007/appendices/C10Sep07.pdf.

>   **b.    *choice of law***

When choosing the forum under a § 1404(a) motion to transfer venue, choice of law is a relevant factor, albeit, not determinative. See Viacom Int'l, Inc. v. Melvin Simon Productions, Inc., 774 F.Supp. 858, 868 (S.D.N.Y. 1991) (" The district court which is located within the state whose law will be applied might be favored in the § 1404(a) balancing analysis, because it may

be more familiar with that state's law than is the other district court.")

The sales reps executed contracts containing restrictive covenants containing choice of law provisions requiring that they be construed and interpreted in accordance with the laws of Florida, without regard to the Florida's choice of law rules (i.e., Florida's substantive law would apply to interpretations and enforceability of the contracts).   Cases involving restrictive covenants invariably turn on the enforceability of the covenant, and GALDERMA disputes the enforceability of the contracts. <u>See</u> Answer, p.9 (Third Aff. Def.).  This case differs from the normal restrictive covenant enforcement action in that the claim is for tortious interference with that covenant.  But the interpretation and enforceability of the restrictive covenants are part of the analysis, and are governed under Florida law.  Because the deployment of the former sales reps occurred outside Texas, Texas law would be inapplicable to any aspect of this lawsuit.

**II.     Conclusion**

For the reasons stated herein, STIEFEL respectfully requests that this Court deny the defendant's motion to transfer venue.

Respectfully submitted this 20th day of October, 2008.

**s/Mark J. Beutler _____**
Michael W. Casey, III
mcasey@ebglaw.com
Florida Bar No. 141430
Mark J. Beutler
mbeutler@ebglaw.com
Florida Bar No. 0023400
EPSTEIN BECKER & GREEN, P.C.
Suite 4300, Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Tel: (305) 982-1520 / Fax: (305) 982-1521
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 08-21620-CIV-GRAHAM/TORRES

| | |
|---|---|
| STIEFEL LABORATORIES, INC. and, | ) |
| STIEFEL SALES, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| GALDERMA LABORATORIES, L.P., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of October, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified.


**s/ Mark J. Beutler**
Mark J. Beutler

**Service List**

**Stiefel Laboratories, Inc. and Stiefel Sales, Inc.
v. Galderma Laboratories, L.P.**

**Case No.: 08-21620-CIV-Graham/Torres
United States District Court**

Donald J. Hayden
donald.hayden@bakernet.com
BAKER & McKENZIE LLP
Mellon Financial Center
1111 Brickell Avenue
Suite 1700
Miami, Florida 33131
Tel: (305) 789 8900
Fax: (305) 789 8953

Thomas Campbell
thomas.campbell@bakernet.com
Ethan A. Berghoff
ethan.berghoff@bakernet.com
BAKER & McKENZIE LLP
One Prudential Plaza
130 East Randolph Drive
Chicago, Illinois 60601
Tel.: (312) 861-8000
Fax.: (312) 861-2899

*Counsel for Defendant*

[Via CM/ECF]